**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**MICHELE CZERWINSKI,**

                                        **Plaintiff,**

        **-against-**                                          **6:18-CV-0635**

**NEW YORK STATE DEPARTMENT OF**
**CORRECTIONS AND COMMUNITY**
**SUPERVISION,**

                                        **Defendant.**
_____

**THOMAS J. McAVOY,**
**Senior United States District Judge**


**DECISION and ORDER**

**I.      INTRODUCTION**

        Following Defendant the New York State Department of Corrections and

Community Supervision's ("Defendant" or "DOCCS") Fed. R. Civ. P. 12(b)(6) motion, the

Court dismissed all of Plaintiff Michele Czerwinski's ("Plaintiff") causes of action except the

employment retaliation claim brought under Title VII of the Civil Rights Act of 1964 ("Title

VII").  Dkt. 16.  Defendant now moves for summary judgment on this claim. Dkt. 38.

Plaintiff opposes the motion, Dkt. 39, and Defendant filed a reply.  Dkt.  40. The motion is

now ripe for disposition.

**II.     STANDARDS OF REVIEW**

        **a.  Summary Judgement**

        On a motion for summary judgment the Court must construe the properly disputed

facts in the light most favorable to the non-moving party, *see Scott v. Harris*, 127 S. Ct. 1769, 1776 (2007), and may grant summary judgment only where "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see O'Hara v. National Union Fire Ins. Co. of Pittsburgh, PA*, 642 F.3d 110, 116 (2d Cir. 2011).

> **b.  Title VII Retaliation**

Title VII retaliation claims are evaluated using the burden-shifting analytical framework of *McDonnell-Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Hicks v. Baines*, 593 F.3d 159, 164 (2d Cir. 2010). "First, the plaintiff must establish a *prima facie* case of retaliation by showing: '(1) participation in a protected activity; (2) that the defendant knew of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action." *Id.* (interior quotation marks and citations omitted). "The plaintiff's burden in this regard is *de minimis*, and the court's role in evaluating a summary judgment request is to determine only whether proffered admissible evidence would be sufficient to permit a rational finder of fact to infer a retaliatory motive." *Id.* (interior quotation marks and citations omitted).

"Actions are 'materially adverse' if they are 'harmful to the point that they could well dissuade a reasonable worker from making or supporting a charge of discrimination.'" *Id.* at 165 (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57 (2006)). "An action that 'well might have dissuaded a reasonable worker from making or supporting a charge of discrimination,' *Burlington*, 548 U.S. at 68], is 'an objective standard,' and it does not matter that '*in this particular instance* Plaintiff[ ] [was] not dissuaded from filing

complaints after the allegedly retaliatory acts.'" *Dedjoe v. McCarthy*, No. 1:15-CV-1170 (LEK/CFH), 2017 WL 4326516, at *14 (N.D.N.Y. Sept. 28, 2017)(quoting *Gutierrez v. City of New York*, No. 08-CV-6537, 2011 WL 7832709, at *4 (S.D.N.Y. Sept. 26, 2011) (emphasis in original)).  "[I]n determining whether conduct amounts to an adverse employment action, the alleged acts of retaliation need to be considered both separately and in the aggregate, as even minor acts of retaliation can be sufficiently 'substantial in gross' as to be actionable." *Hicks*, 593 F.3d at 165 (citing *Zelnik v. Fashion Inst. of Tech*., 464 F.3d 217, 227 (2d Cir. 2006)).

To establish a *prima facie* case, a plaintiff must demonstrate a causal relationship between protected activity and an adverse employment action. *Id* at 170.  "[P]roof of causation can be shown either: (1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant." *Id.* (internal quotation marks and citation omitted).

"If the plaintiff sustains this initial burden, a presumption of retaliation arises." *Hicks*, 593 F.3d at 164 (quotation marks and citation omitted).  "The defendant must then articulate a legitimate, non-retaliatory reason for the adverse employment action." *Id.* (quotation marks and citation omitted).  The employer's burden is merely one of "production," not proof. *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 253 (1981).

If the defendant articulates a legitimate, non-retaliatory reason for the adverse

employment action, "the presumption of retaliation arising from the establishment of the *prima facie* case drops from the picture." *Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 845 (2d Cir. 2013)(quotation marks and citation omitted).  The plaintiff must then show "that the desire to retaliate was the but-for cause of the challenged employment action." *Ya-Chen Chen v. City Univ. of New York*, 805 F.3d 59, 70 (2d Cir. 2015) (quoting *Univ. of Tex. V. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 352 (2013)).  "'But-for' causation does not, however, require proof that retaliation was the only cause of the employer's action, but only that the adverse action would not have occurred in the absence of the retaliatory motive." *Duplan v. City of New York*, 888 F.3d 612, 625 (2d Cir. 2018)(quotation marks and citation omitted); *see Zann Kwan*, 737 F.3d at 846 (same).  "The plaintiff [ ] bears the ultimate burden to show that the employer's proffered reason was merely a pretext for an unlawful motive." *Bentley v. AutoZoners, LLC*, 935 F.3d 76, 88–89 (2d Cir. 2019) (internal quotations omitted).

"To prevail at the summary judgment stage in a retaliation case, a defendant must show that the plaintiff failed to make out a *prima facie* case of retaliation, or that the defendant has offered legitimate, nonretaliatory reasons for the challenged actions, and there are no triable issue of fact as to whether the defendant's explanations were pretextual." *Buczakowski v. Crouse Health Hosp., Inc.*, No. 5:18-CV-0330 (LEK/ML), 2022 WL 356698, at *12 (N.D.N.Y. Feb. 7, 2022)(citations omitted).

## III.   BACKGROUND

The Court will set forth the relevant material facts in addressing the motion below.

## IV.   DISCUSSION

This case arises at the confluence of two equally important rights - the right of an

employer to provide what it deems appropriate discipline and counseling for an employee, and an employee's right to be free from unlawful retaliation after engaging in protected activity.  Plaintiff is employed by DOCCS as a Nurse Administrator ("NA") at Mid-State Correctional Facility ("Mid-State") in Marcy, New York.  (Ex. "1", Dkt. 1, ¶ 4; Ex. "51", Plaintiff's deposition  testimony, p. 17).  Plaintiff asserts that was subjected to unlawful retaliation primarily in connection with various disciplinary and counseling actions taken against her.

### Protected Activities

Plaintiff alleges that she engaged in the following protected activities during the relevant period of time:

a. Filed a complaint with the Office of Diversity Management ("ODM") against Mid-State Deputy Superintendent of Administration ("DSA") Terry Whitaker on December 28, 2015 alleging that he engaged in discriminatory acts against her based on her gender and race and/or national origin (*See* Ex. "2", "Exhibit B" to the Verified Complaint [Dkt. 1-2]);

b. Submitted a memorandum to the NYS Public Employees Federation AFL-CIO on or around October 11, 2016, detailing specifically alleged acts of hostility and retaliation committed by DOCCS personnel against her between August 25, 2016 and October 11, 2016 (*See* Ex. "2", "Exhibit F" to Verified Complaint [Dkt. 1-6]);

c. Submitted a memorandum dated October 13, 2016, to Deputy Superintendent of Programs Joslyn, detailing her strong concerns about being alone with DSA Whitaker due to constant verbal abuse she was being subjected to by him and the level of micromanagement (*See* Ex. "2", "Exhibit G" to Verified Complaint [Dkt. 1-7]);

d. From October 12, 2016 through December 22, 2016, Plaintiff's attorneys, acting on her behalf, sent written correspondences to DOCCS officials further reporting and detailing the discrimination and retaliation issues Plaintiff had been facing at work, and requesting assistance in addressing this ongoing hostile work environment (*See* Ex. "2", "Exhibits H, I, and J" to Verified Complaint [Dkts. 1-8, 1-9, 1-10]).

(Ex. "51", Plaintiff Dep., pp. 46 – 47; Ex. "23", Interrogatory responses, ¶9).  Defendant concedes for purposes of this motion "that Plaintiff engaged in protected activities,

beginning on December 28, 2015." (Dkt. 38-65 at 6).

**Alleged Retaliatory Acts**

Plaintiff alleges the following acts of retaliation by Defendant:

a. "On January 27, 2016, Plaintiff was issued a Notice of Discipline (NOD) by the DOCCS, written by Bureau of Labor Relations Director John Shipley, with six (6) charges of alleged misconduct and a penalty of dismissal and loss of accrued annual leave. *See* "Exhibit C" to Verified Complaint. During the grievance process, Plaintiff was wrongfully suspended from work without pay. Despite an arbitrator dismissing all charges that did not predate Plaintiff's ODM complaint and drastically reducing the imposed penalty with orders to pay Plaintiff for the time of her suspension (*See* "Exhibit D" to Verified Complaint), Plaintiff has still not been fully recouped for the salary that was wrongfully withheld from her during this suspension." (Ex. "23", ¶10(a); Ex. "51", Plaintiff Dep., pp. 49-55);

b. "On January 6, 2017, Plaintiff was again placed on unpaid administrative leave by Superintendent Matthew Thoms due to alleged conduct during an interview with Magdalah Plaisime. *See* "Exhibit K" to Verified Complaint. On February 2, 2017 and February 17, 2017, Plaintiff was issued two (2) separate NODs and disciplinary charges involving alleged conduct both related and unrelated to the interview with Ms. Plaisime" (Ex. "23", ¶10(b); Ex. "51", Plaintiff Dep.,  pp. 277-78, 284-86; Ex. 1, Dkt. 1, ¶¶ 32-33);

c. "Plaintiff has been subjected to a prolonged and continuous pattern of discriminatory and retaliatory actions by DOCCS personnel that have impacted her well-being, her ability to perform her professional duties, and created an ongoing hostile work environment. Please refer to responses and documents cited in the previous Interrogatories above" (Ex. "23", ¶10(c)) – the "responses and documents cited in the previous Interrogatories above" include Plaintiff's 12/28/2015 ODM complaint (Ex. "2", Ex. "B" thereto, Dkt. 1-2; Ex."4"), and the allegations made therein (see, Ex. "23", ¶¶ 2 – 6), and a list of allegedly hostile and retaliatory acts by DOCCS personnel between August 25, 2016 and October 11, 2016 (Ex. "2", Ex. "F" thereto, Dkt. 1-6; Ex. "1", Dkt. 1, ¶ 23);

d. DSA Terry Whitaker's 2015-2016 employment evaluation of Plaintiff (Ex. "51", Plaintiff Dep., pp. 64-66, 136-37);

e. DSA Whitaker's October 12, 2016 counseling session and October 13, 2016 counseling memorandum (Ex. "1", Dkt. 1, ¶ 24);

f. Plaintiff's receipt of a December 16, 2016 memorandum requesting a response to a workplace violence complaint by another employee against her (Ex. "1", Dkt. 1, ¶ 30; Ex. "51", Plaintiff Dep., pp. 265-66, 269-70);

g. DSA Sandra O'Connor's 2016-2017 employment evaluation of Plaintiff (Id., pp. 143-43);

h. DSA O'Connor's January 12, 2018 counseling memorandum (Ex. "1", Dkt. 1, ¶ 39; Ex. "51", Plaintiff Dep., pp. 308-09); and

i. General allegations of "assaults" by employees she supervised, phone calls from the facility when she was off-duty, and complaints made about her by other staff members. (Ex. "1", Dkt. 1, ¶¶ 38-39).

Defendant argues that Plaintiff cannot establish that several of these actions either qualified as adverse employment actions under the law, or were causally connected to the alleged protected activities. Further, Defendant contends, Plaintiff cannot raise a question of fact, based on the admissible proof in the record, to rebut Defendant's showing that the reasons for discipline, evaluations and other employment actions were legitimate, non-retaliatory and non-pretextual.

### *Prima Facie* Case

### a.  January 27, 2016 Notice of Discipline

### 1.  Causally Related to Protected Activity

A claim of retaliation requires, minimally, that a plaintiff be able to allege that she was subjected to an adverse action because of her engagement in a protected activity. *See Middleton v. Metropolitan College of New York*, 545 F. Supp.2d 369, 375-76 (S.D.N.Y. 2008) (no causation shown for purposes of satisfying a *prima facie* case of retaliation when the decision to terminate the plaintiff was made before the plaintiff delivered a sexual harassment complaint to the decision maker).  Defendant contends that the January 27, 2016 Notice of Discipline was the byproduct of a course of discipline that commenced prior to the protected activity in issue, and therefore cannot establish a causal nexus between

this action and a protected activity. *See Slattery v. Swiss Reinsurance America Corp.*, 248 F.3d 87, 95 (2d Cir. 2001) (temporal proximity alone does not create an inference of causation where "gradual adverse job actions began well before the plaintiff had ever engaged in any protected activity"); *Hardy v. Rochester Genesee Regional Transportation Authority*, 906 F. Supp.2d 178, 186 (W.D.N.Y. 2012) (employee could not establish causal nexus between his protected activity and issuance of a "last-chance agreement" where the agreement was the end result of a course of progressive discipline beginning before the protected activity).  In this regard, Defendant has provided uncontradicted evidence that at least some of the charges in the 1/27/2016 NOD had been contemplated in advance of December 28, 2015 when Plaintiff filed her first ODM complaint.  This evidence indicates that DSA Whitaker had emailed Michele O'Gorman at DOCCS Bureau of Labor Relations on November 16, 2015 requesting that discipline be authorized as against Plaintiff for work-related issues.  A referral had been made, and a determination that disciplinary action was warranted against NA Czerwinski, by November 2015. (Whitaker Decl., ¶ ¶ 17 - 24, Ex. "D"-"E" thereto; O'Gorman Decl., ¶¶ 3 – 6, Exs. "A" - "B" thereto; Shipley Decl., ¶15).

Plaintiff acknowledges that the charges in this NOD that predate her ODM complaint cannot be deemed retaliatory, however she has supplied evidence indicating that of the six (6) charges in the NOD, only Charges 1 & 3 related to events that predated Plaintiff's ODM complaint. (Ex. "C" to the Complaint).  Plaintiff contends that Charges 2, 4, 5, and 6 were baseless and meritless, and were added following Plaintiff's ODM complaint in order to justify terminating Plaintiff's employment in retaliation for the ODM complaint.  Further, Plaintiff points to evidence indicating that although John Shipley, Director of the Bureau of Labor Relations, signed the NOD, DSA Whitaker - who was the subject of Plaintiff's ODM

8

complaint - served as the primary source for Charges 1, 2, 3, and 6.  (*See* O'Gorman Decl., ¶¶ 9-14).[1]

Based on the temporal proximity of the January 27, 2016 NOD to Plaintiff's ODM complaint, and presuming that someone involved with this NOD had knowledge of the ODM complaint (discussed next), a reasonable factfinder could conclude that there was a causal connection between Plaintiff's ODM complaint and the post-ODM complaint charges.  In this regard, a reasonable factfinder could conclude that the NOD charges were beefed up with post-ODM complaint conduct to retaliate against Plaintiff by providing additional justification for her discharge.

## 2. Knowledge of the ODM Complaint

Defendant argues that admissible evidence indicates that neither DSA Whitaker, who reached out to O'Gorman to commence the discipline, nor O'Gorman, the author of the 1/27/2016 NOD, knew that Plaintiff filed the ODM Complaint when the NOD was served.  Plaintiff does not challenge O'Gorman's lack of knowledge, but does challenge Whitaker's.

The evidence indicates that on January 4, 2016, HUB Superintendent Paul Gonyea called Whitaker and told him he had to come to Gonyea's office so Gonyea could give him a cease and desist order for bullying in the workplace. (Whitaker Decl., ¶ 27; Ex. "52" Whitaker Dep., pp. 47-50; Ex. "29", Whitaker April 27, 2016 sworn hearing testimony, pp. 152-53).  Whitaker testified that at Gonyea's office, Gonyea "told me that, you know, there

---

[1]The source of Charge 4 was Mid-State Supt. Joseph Ward, Holly Collett, Assistant Director of DOCCS Health Services and Management Operations, DOCCS Regional Health Services Administrator Russell Blair. (O'Gorman Decl., ¶¶ 9-14)).  Charge 5 was withdrawn and the parties to not indicate who was the source of this charge.

was a complaint that was filed through Office of Diversity Management, and said another

thing, and basically he said, you know, if any of this is accurate, see some -- tell me to

cease and desist, I'm like, okay." (Def. Ex. "52" at 50). Whitaker also testified:

Q. He told you to cease and desist, he used those actual words?

A. Yeah, I believe, I'm not sure if it was that or if it was a form that I got, that, you know, stated that.

Q. Stated what?

A. Cease and desist.

* * *

Q. And if he is telling you to cease and desist. Isn't it necessary for you to know who filed the complaint in order for you to cease and desist?

A. No. No, I don't -- I don't believe so.

Q. So are you saying, is it your testimony that when you left his office, you did not know who filed this complaint against you?

A. Yeah, I do not recall who -- I don't recall that. I remember discussing, you know, certain, you know, issues and situations, you know, where, you know, if this has happened and if that's happened, if this is happening, you know, that type of thing, you know.

Q. Okay. These -- these situations that you were discussing with him, if this happened or if that happened, can you tell me what those are in a little more detail?

A. You know, I don't recall what all the exact verbiage was on it, you know, I guess, there was -- I don't recall the whole meeting, to be quite honest with you.

Q. Well, to the best of your memory, when he said to you, and you're recalling, if this happened or if that happened, you know, cease or desist. Can you please tell me what it is that he's referring to as if this happened or that happened?

A. Like I said, I don't recall. I don't recall what the exact verbiage was.

Q. Do you believe that, at least at the time of this meeting, you understood what he was referring to?

10

A. Yes, I do.

Q.  And you understood that you needed to cease and desist?

A. If it was happening, yes.

(Def. Ex. "52" at 51-54).

Based on this testimony, a reasonable factfinder could conclude that despite Whitaker's professed lack of memory of the specifics, the discussion in the Superintendent's office involving the substance of Plaintiff's ODM complaint provided enough detail to allow Whitaker to deduce that it was Plaintiff who filed the complaint against him. This satisfies Plaintiff's *de minims* burden of establishing that Whitaker had knowledge of the protected conduct shortly before the January 27, 2016 NOD was lodged.

### 3.  Adverse Action

The NOD resulted in Plaintiff's immediate suspension without pay and sought Plaintiff's discharge. Plaintiff disputed the penalty by filing a disciplinary grievance.  A formal hearing was held over the course of three (3) days before Arbitrator Ivor R. Moskowitz.  On August 19, 2016, Arbitrator Moskowitz issued a decision finding Plaintiff guilty on Charges 1 & 3, dismissing Charges 2 and 6 for failure to prove by a preponderance of the evidence that Plaintiff was insubordinate, and dismissing Charge 4 without prejudice on procedural grounds.  Charge 5 was withdrawn by the State. (Exhibit "D" to Complaint at 7-9; O'Gorman Decl., ¶ 15).  Plaintiff indicates that while Charges 1 and 3 that pre-dated Plaintiff's ODM complaint were upheld, DOCCS's request for a penalty of termination was not. The appropriate penalty was determined to be one-month suspension without salary. (Exhibit "D" to Complaint at 10). The arbitrator also found that DOCCS had to pay Plaintiff for the time of her initial suspension because DOCCS did not meet the

standard under the collective bargaining agreement for initially suspending her without pay. (*Id.* at 9-10).

Plaintiff contends that she had to institute an Article 75 petition because she did not timely receive her entitled backpay from when she was suspended.  Plaintiff indicates that on January 23, 2018, she received a judgment from the Albany County Supreme Court confirming the arbitrator's award and ordering DOCCS to pay Plaintiff what she was owed with interest.  However, Plaintiff contends, she was still not paid despite the Decision only giving DOCCS sixty (60) days to comply with the order as DOCCS is appealing the decision. (Exhibit "E" to Complaint).  Defendant contends that there was a legitimate, non-retaliatory reason for the delay in paying Plaintiff for her time on  suspension. The Article 75 petition relative to the Arbitrator's decision was heard in State Court and on appeal to the Appellate Division, Third Department, and the Appellate Division remanded the matter to the arbitrator for further proceedings, finding that the arbitrator had exceeded his authority. (Shipley Decl., ¶ 18; Ex. "51", Plaintiff Dep., pp. 186 - 87).  A Consent Award was then signed, and Plaintiff was made whole for any lost wages resulting from the 2016 suspension. (Shipley Decl., ¶ 18, Ex. "E" thereto; Ex. "51", Plaintiff Dep., pp. 187 – 193; Exs. "33", "36").

Plaintiff does not specifically address Defendant's claim of a legitimate and non-retaliatory reason for delay in paying plaintiff her back pay, but rather argues that in light of the combination of adverse actions taken against her initiated by or contributed to by Whitaker, a reasonable juror could conclude that these actions were retaliatory in nature. *See* Dkt. 39 at 25.  By failing to specifically address the delay in pay issue, Plaintiff has abandoned any claim that the delay was itself a retaliatory action. *See Jackson v. Fed.*

12

*Express*, 766 F.3d 189, 197–98 (2d Cir. 2014) ("[I]n the case of a counseled party, a court may, when appropriate, infer from a party's partial opposition that relevant claims or defenses that are not defended have been abandoned."); *Kovaco v. Rockbestos-Surprenant Cable Corp.*, 834 F.3d 128, 143–44 (2d Cir. 2016) (affirming district court's grant of summary judgment on abandonment grounds because plaintiff's opposition to summary judgment motion "failed to support or even address the purported hostile-work-environment claims"); *Hall v. Verizon New York, Inc.*, No. 13-CV-5518, 2017 WL 3605503, at *7 (S.D.N.Y. July 26, 2017) (dismissing discrimination claims "as abandoned" because plaintiff "made no effort whatsoever to address these claims in her opposition brief on [defendant's] motion for summary judgment").  Thus, Defendant's motion is granted to the extent it seeks to dismiss any claim that it retaliated against Plaintiff by failing to timely pay her back-pay following her return from suspension. *See Dorcely v. Wyandanch Union Free Sch. Dist.*, 665 F. Supp. 2d 178, 199 (E.D.N.Y. 2009)("Second Circuit case law makes clear that a court may simply assume that a plaintiff has established a *prima facie* case and skip to the final step in the *McDonnell Douglas* analysis, as long as the employer has articulated a legitimate, nondiscriminatory reason for the adverse employment action.")(citing cases).

However, Plaintiff has met her *de minimis* burden of establishing a *prime facie* case of retaliation based on the institution of the January 27, 2016 NOD.  This action was commenced approximately one month after Plaintiff filed her ODM complaint against Whitaker, and at the institution of the proceeding Plaintiff was improperly suspended without pay.  Given the close temporal proximity the Plaintiff's complaint against Whitaker, a rational factfinder could infer a retaliatory motive in instituting this disciplinary action and

suspending her without pay.  Further, a rational factfinder could conclude that the institution

of this action and concomitant suspension without pay would have dissuaded a reasonable

employee from making or supporting a claim of discrimination.  The Court will address

Plaintiff's ultimate burden as to this claim after it addresses Plaintiff's other alleged adverse

actions.

### b. 1/6/17 Suspension, 2/2/17 NOD, 2/17/17 NOD

Plaintiff alleges that on January 6, 2017, she was placed on unpaid administrative

leave by Superintendent Matthew Thoms due to alleged conduct during an interview with

Magdalah Plaisime, and on February 2, 2017 and February 17, 2017, she was issued

NODs and disciplinary charges. (Ex. "23", ¶10(b); Ex. "51", Plaintiff Dep., pp. 277-78,

284-86; Ex. 1, Dkt. 1, ¶¶ 32-33).  Defendant contends that there were legitimate,

non-discriminatory reasons for these actions.

### 1. 1/6/17 suspension, 2/17/17 NOD.

The facts surrounding Plaintiff's 1/6/17 suspension and 2/17/17 NOD are, to a large

degree, undisputed. *See* Pl. Resp. to Def. L. R. 7.1 Stat.,[2] ¶¶ 249 – 266.[3]  Plaintiff

---

[2]Local Rule 7.1(a)(3) was renumbered as Local Rule 56.1(a) and (b) on January 1, 2021.  Although the instant motion was filed after January 1, 2021, the parties refer to Local Rule 7.1(a)(3).

[3]Plaintiff admits, either in whole or in part, many of the properly supported facts in Defendant's L.R. 7.1 Statement of Facts. *See* Dkt. 39-4, ¶¶ 249 – 266.  Some of Plaintiff's denials cite to where in the record support for denial exists as required by the Local Rules, but in others Plaintiff simply denies facts (or portions of facts) without citation to where in the record admissible evidence supports the denial.  These unsupported denials are insufficient under the Local Rules to raise a question of fact as to Defendant's properly supported statement of facts. *See* L. R. 56.1(b)("Each denial shall set forth a specific citation to the record where the factual issue arises. . . . <u>Any facts set forth in the Statement of Material Facts shall be deemed admitted unless specifically controverted by</u>

(continued...)

interviewed job candidate Magdalah Plaisime for a nursing job at Mid-State on December 30, 2016.  She purportedly made comments which Plaisime found offensive.[4]  Plaisime complained to Whitaker.  Whitaker transferred the phone call to Superintendent Thoms, who took the report, and called John Shipley to refer the matter for possible discipline, and suspended Plaintiff with pay on January 6, 2017.  Shipley made the decision to bring charges, which were served on February 17, 2017.   Plaintiff was suspended without pay on this date pending the outcome of the disciplinary charge. (Shipley Aff. ¶ 24).  While Plaintiff states in her response to Defendant's Local Rule 7.1 Statement of Material Facts that "Whitaker played a crucial role in facilitating and motivating to have these charges brought against Plaintve out of retaliation," she does not indicate in that document where in the record proof of this assertion can be found.  Nonetheless, in her brief in opposition to Defendant's motion, Plaintiff cites to Whitaker's deposition testimony where he admits to being directly involved with initiating and drafting the charges against Plaintiff in the February 17, 2017 NOD and the February 2, 2017 NOD (discussed next). (Dkt. 39 at 21, citing Def. Ex. 52 at 108, 114-115).

On June 6, 2017, Arbitrator E. David Hyland issued an Interim Opinion and Award finding that DOCCS lacked probable cause to suspend Plaintiff without pay within the meaning of the parties' collective bargaining agreement, and that Plaintiff needed to be

---

[3](...continued)
the opposing party.")(underscoring in original).

[4]The charges allege that Plaintiff stated, in sum and substance, "they don't like blacks around here," and "Do you like gay people? I am only asking because if you don't like gay people, you cannot work around here." Compl. Ex. L.  Plaintiff denies that she made these statements.

returned to payroll and given back the accruals she used. (Ex. "L" to Complaint at 6).

After a three (3) day hearing, Arbitrator Hyland found Plaintiff not guilty on all the charges from the February 17, 2017 NOD. (Ex. "M" to Complaint).  Arbitrator Hyland determined that the State had failed to establish by a preponderance of the evidence the charges and, therefore, there was no just cause for discipline on those charges. (*Id.* at 25). Arbitrator Hyland  found that Plaintiff was "entitled to reinstatement and make whole relief for the entire period of her suspension without pay until the date of her return to the payroll."  (*Id.*).

A reasonable factfinder could conclude that Plaintiff's improper suspension without pay would have dissuaded a reasonable employee from making or supporting a claim of discrimination.  Further, inasmuch as this occurred shortly after Plaintiff's union representative's December 1, 2016 letter to Thoms requesting help with a purported hostile work environment created for Plaintiff by Whitaker, (Ex. "I" to Complaint), and in light of Whitaker's involvement in the NDO, a reasonable factfinder could conclude that a retaliatory motive existed for bringing these charges and suspending Plaintiff without pay.

Defendant properly supports its contention that despite the resolution, the charges were brought for legitimate, non-discriminatory reasons.  *See* Def. L. R. 7.1 Stat., ¶¶ 249 – 266.  The Court will address below whether Plaintiff has set forth sufficient facts for a reasonable factfinder to conclude that the Defendant's articulated reason for the adverse action was merely a pretext for discrimination.

### 2. 2/2/17 NOD.

On January 25, 2017, DOCCS Assistant Counsel Nancy Steuhl forwarded to John Shipley a memorandum recommending administrative action to DOCCS Bureau of Labor

Relations, based upon a Governor's Office of Employee Relations ("GOER") investigation into allegations against Plaintiff made by DOCCS RN Jean Day. (Shipley Decl., ¶19, Ex. "F" thereto).  The NOD, drafted by Shipley and which sought Plaintiff's dismissal from service and the loss of any accrued annual leave, brought three (3) charges against Plaintiff, all alleging that she was "insubordinate to a supervisor" for failing to comply with direct orders. (Shipley Ex. "G").  The supervisor referred to in each charge was Whitaker. (Def. Ex. "52" at 110, Whitaker Declaration at ¶ 48-50).  Whitaker detailed the factual basis for the charges of insubordination against Plaintiff in the 2/2/17 NOD in his Declaration at ¶¶ 47 – 50.  This presents a legitimate, non-discriminatory reason for the disciplinary action.  As indicated in Whitaker's deposition, he played some role in the institution of the charges in the February 2, 2017 NOD.  This NOD did not result in a hearing as the charges were privately settled and dismissed. (Shipley Dec. at ¶ 21).

A reasonable factfinder could conclude that the NOD seeking Plaintiff's termination would have dissuaded a reasonable employee from making or supporting a claim of discrimination, and that the charges were casually related to Plaintiff's complaint about Whitaker.  The Court will address below whether Plaintiff presents evidence from which a reasonable factfinder could conclude that the articulated reasons are merely a pretext for discrimination.

### c. Ongoing hostile environment

Plaintiff alleges that an ongoing hostile environment was retaliation for her complaints. In her interrogatory responses and Complaint, Plaintiff alleges that she "has been subjected to a prolonged and continuous pattern of discriminatory and retaliatory actions by DOCCS personnel that have impacted her well-being, her ability to perform her

professional duties, and created an ongoing hostile work environment. Please refer to responses and documents cited in the previous Interrogatories above" (Ex. "23", ¶10(c)). The "responses and documents cited in the previous Interrogatories above" include Plaintiff's 12/28/2015 ODM complaint (Ex. "2", Ex. "B" thereto, Dkt. 1-2; Ex."4"), the allegations made therein (see, Ex. "23", ¶¶ 2 – 6), and a list of allegedly hostile and retaliatory acts by DOCCS personnel between August 25, 2016 and October 11, 2016 (Ex. "2", Ex. "F" thereto, Dkt. 1-6; Ex. "1", Dkt. 1, ¶ 23).

### 1. Plaintiff's ODM Complaint

Plaintiff characterizes the allegedly hostile conduct set forth in her 12/28/2015 ODM complaint as "retaliation". (Ex. "23", ¶¶ 2 – 6, 10(c)).  That ODM complaint was, by Plaintiff's own testimony, her first "protected conduct." (*See*, Ex. "51", p. 47).  As indicated above, adverse action that occurs before protected conduct cannot support a claim of retaliation.  Thus, the allegedly hostile conduct set forth in Plaintiff's 12/28/2015 ODM complaint cannot be the basis of retaliation claim.  Accordingly, that much of the retaliation claim based upon the alleged conduct in Plaintiff's 12/28/2015 ODM complaint is dismissed.

### 2. List of conduct between August 25, 2016 and October 11, 2016

Plaintiff claims that she returned to work on August 25, 2016 after her suspension from the January 27, 2016 NOD, and was "welcomed back with open hostility and further retaliation." (Ex. "1", Dkt. 1, ¶30).  Plaintiff testified that she prepared the document annexed to the Complaint as Ex. "F" "to keep track of everything" at the request of her union representative. (Ex. "51", Plaintiff's Dep., pp. 195-96). The list is contained at Ex. "F" to the Complaint, Dkt. 1-6 (hereinafter "Dkt. 1-6"). The listed incidents cover the period

August 25, 2016 through October 11, 2016. (Ex. "1", ¶30).

As Defendant argues, in the context of a retaliation claim, to establish an adverse employment action a plaintiff must show "that a reasonable employee would have found the challenged action materially adverse, which means that the adverse action was not trivial and would deter a reasonable person from engaging in protected activity." *Jaeger v. N. Babylon Union Free Sch. Dist.*, 191 F. Supp. 3d 215, 235 (E.D.N.Y. 2016) (internal quotations omitted). "[A] plaintiff alleging a hostile work environment 'must demonstrate either that a single incident was extraordinarily severe, or that a series of incidents were 'sufficiently continuous and concerted' to have altered the conditions of her working environment.'" *Alfano v. Costello*, 294 F.3d 365, 374 (2d Cir. 2002).  However, "petty slights or minor annoyances that often take place at work and that all employees experience do not constitute actionable retaliation." *Hicks*, 593 F.3d at 165; *see Richardson v. New York State Dep't of Corr. Serv.*, 180 F.3d 426, 446 (2d Cir. 1999) ("not every unpleasant matter short of [discharge or demotion] creates a cause of action' for retaliatory discharge."). Similarly, "a plaintiff's purely subjective feelings about the events and circumstances surrounding the allegedly adverse employment" are insufficient to establish a materially adverse action. *Islamic Soc'y of Fire Dep't Pers. v. City of New York*, 205 F. Supp. 2d 75, 84 (E.D.N.Y. 2002).

Plaintiff testified about each of the 15 bullet points and the long paragraph at the end of that document.  Plaintiff's testimony in this regard is summarized at ¶¶ 164–184 of Defendant's Local Rule 7.1 Statement.  Plaintiff admits many of the statements (which are based on her deposition testimony), and denies others on the grounds that "the alleged action was intended to attack Plaintiff and, in the aggregate, added to the overall hostile

environment and adverse conditions of her job at DOCCS."  Plaintiff's unsupported denials are insufficient under the Local Rules to raise a question of fact as to Defendant's properly supported statements of fact. *See* L. R. 56.1(b).

In her brief in opposition to the instant motion, Plaintiff contends that when she returned to work from her suspension on August 25, 2016 she "continued to receive discriminatory and retaliatory treatment from DSA Whitaker, who at the time was still her direct supervisor."  (Dkt. 39 at 3).  Plaintiff asserts that "[t]his included having to fight to have her health insurance reactivated, being hassled when getting her non-back pay checks, and having to fight to have her accruals properly calculated." (*Id.*, citing Ex. "A"[5] at ¶ 22-23; Ex. "F" to Complaint).  Because Plaintiff fails to oppose the majority of Defendant's contentions relative to Plaintiff's list of purportedly harassing conduct when she returned from her suspension, she is deemed to have abandoned that much of her claim based upon these unchallenged activities.  She does, however, challenge some conduct - having to fight to have her health insurance reactivated, being hassled when getting her non-back pay checks, and having to fight to have her accruals properly calculated.

Regarding the reactivation of her health insurance following her suspension, Plaintiff admits Defendant's Local Rule 7.1 Statement that "she does not know if she had health insurance upon her return to work." Pl. Resp. to Def. 7.1 Stat., ¶ 168 (Dkt. 39-4, ¶ 41).  It is hard to square Plaintiff's contention that she had to fight to get her health insurance reactivated with her admission (based on her deposition testimony) that she did not know if

---

[5]Ex. A is the Complaint in this action.

she had health insurance upon her return to work. Plaintiff's reference to the allegations in the Complaint that contradict her testimony at her deposition fails to raise a material question of fact as to whether she experienced retaliation in relation to reactivating her health insurance upon her return from suspension. Thus, Plaintiff may not proceed on this issue. However, even though she admits that she received her non-back pay checks and deposited the funds, received her back pay, and was paid for back accruals, this does not necessarily mean that she was not hassled about getting the funds or had to fight to obtain them. This is conduct that could dissuade a reasonable employee from making or supporting a claim of discrimination and therefore satisfies Plaintiff's *de minimis* of establishing an adverse action based upon this conduct.

Defendant also contends that there is no causal connection between Plaintiff's ODM Complaint and the alleged conduct described in Dkt. 1-6. Defendant argues that the conduct alleged in Dkt. 1-6 is far less objectively hostile than what Plaintiff alleges occurred prior to her ODM Complaint. Defendant maintains that to establish a causal connection between the protected activity and the alleged hostility, Plaintiff must demonstrate "some increase in the discrimination or harassment—either a 'ratcheting up' of the preexisting behavior, or new, additional forms of harassment[.]'" Dkt. 38-65 at 16 (quoting *Bacchus v. N.Y. City Dep't of Educ.*, 137 F. Supp. 3d 214, 244-45 (E.D.N.Y. 2015)(additional citations omitted); *see also Bacchus*, 137 F. Supp. 3d at 245 ("If, however, the discrimination was just as bad before the employee complained as it was afterwards, then the employee's complaints cannot be said to have led to that discriminatory behavior.")(interior quotation marks and citation omitted).

Drawing all reasonable inferences in Plaintiff's favor, a rational factfinder could

conclude that being hassled about getting her non-back pay checks, and having to fight to

have her accruals properly calculated, amounted to an increase in preexisting behavior, or

new, additional forms of harassment after she returned from suspension.  As indicated

above, when reviewing the circumstances in the light most favorable to Plaintiff, she has

met her *de minimis* burden of showing that a reasonable employee in similar circumstances

would have been dissuaded from bringing or supporting a charge of discrimination.

Further, Plaintiff asserts that DSA Whitaker was behind the harassment she suffered upon

her return to work.  This satisfies Plaintiff's burden of establishing a causal connection at

the *prima facie* stage.

### d. DSA Whitaker's 2015-2016 employment evaluation of Plaintiff

Plaintiff claims that DSA Whitaker's 2015-16 "Unsatisfactory" employment evaluation

of her, the first evaluation she received after she filed the ODM complaint, was retaliatory.

(Ex. "51", p. 66).  Defendant argues that the admissible evidence establishes that

Defendant had legitimate, non-discriminatory reasons for this employment evaluation, (*see*

Def. Rule 7.1 statement, ¶¶ 185 - 226; Whitaker Decl., ¶¶ 29 – 44); that many of the

critiques levied in the evaluation had been the subject of critiques in prior employment

evaluations or counseling memorandums which preceded the 2015-16 evaluation and

Plaintiff's ODM Complaint; and that this negative evaluation was unaccompanied by any

change in job responsibilities, termination, or demotion. (Ex. "51", Plaintiff Dep., pp. 64-75,

69-71; Rule 7.1 Statement at ¶¶ 17 – 23).  Plaintiff counters that this was the first

unsatisfactory overall grade she had ever received; that Whitaker extensively listed

criticisms and serious accusations against her; that the evaluation indicates that Plaintiff

received the January 28, 2016 NOD "for the negligence noted throughout this performance

evaluation" but does not mention that four of the six charges were either withdrawn by DOCCS or dismissed, or that the charges which were upheld only applied to two specific allegations (inventory review and updating accreditation folders); and that the evaluation was overturned on appeal and changed from "Unsatisfactory" to "Satisfactory," (Def. Ex. "51" at 134-136, Def. Ex. "19"), although the written criticisms by Whitaker, including those linked to the January 2016 NOD, remained in the final evaluation. (*Id*.)

Drawing all reasonable inferences in Plaintiff's favor, a reasonable factfinder could conclude that Plaintiff has established a *prima facie* case of retaliation in that Whitaker issued her an "Unsatisfactory" evaluation that was reversed on appeal, yet Whitaker's criticisms remained in her file.  While Plaintiff agreed that the critiques contained in the 2015-16 evaluation were similar to critiques which had been raised in prior evaluations before she filed a complaint against Whitaker, Plaintiff evidently did not agree with the overall assessment or she would not have appealed it.   Because the "Unsatisfactory" overall grade was reversed on appeal, a reasonable factfinder could conclude that Whitaker issued this evaluation in retaliation for Plaintiff's ODM complaint.  Under these circumstances, a reasonable factfinder could conclude that an objectively reasonable employee would be dissuaded from filing or supporting a charge of discrimination.  Further, although a court is not to second guess business judgments so long as they are not based on discrimination, *see Yu v. N.Y. City Hous. Dev. Corp*., 494 Fed. Appx. 122, 125 (2d Cir. 2012), a reasonable fact finder could conclude that for purposes of the *prima facie* case Whitaker's "Unsatisfactory' assessment of Plaintiff was based on a retaliatory motive. Although Plaintiff had previously received negative evaluations, this was the first that was overall "Unsatisfactory," providing some indication that the evaluation was not a mere

continuation of Plaintiff's prior performance but rather an escalation of the criticism Plaintiff received. Plaintiff has met her *de minimis* burden of establishing that this conduct constituted an adverse action for purposes of the *prima facie* case.

### e. DSA Whitaker's October 12, 2016 counseling session and October 13, 2016 counseling memorandum.

Defendant contends that it has articulated legitimate, non-retaliatory reasons for DSA Whitaker's October 12, 2016 counseling session and October 13, 2016 counseling memorandum. (Dkt. 38-65 at 18, citing Whitaker Decl., ¶¶ 45 – 46 and Def. Rule 7.1 Statement at ¶¶ 219– 226). Citing to Defendant's Rule 7.1 Statement at ¶¶ 219 – 226, Defendant maintains that "[t]he counseling memorandum, and the meeting of October 12, 2016, was unrelated to any complaint made by Plaintiff against Whitaker, Whitaker did not hold the counseling or draft this in any way to retaliate against Plaintiff for any prior complaint, and the counseling and memorandum were based on legitimate performance issues detailed therein." (*Id.*).

Plaintiff did not properly respond to the supported facts presented in Defendant's Rule 7.1 Statement at ¶¶ 219 – 226 in that, in connection with her denials, she failed to set forth "a specific citation to the record where the factual issue arises" as required by Local Rule 56.1(b). Thus, all of Defendant's facts asserted in its Rule 7.1 Statement at ¶¶ 219 – 226 are deemed admitted. (*See* L.R. 56.1(b)). Although Plaintiff opposes Defendant's position in her brief by citing to the counseling memo, (*see* Dkt. 39, at 5-6[6]) this provides

---

[6]Plaintiff asserts:

On October 12, 2016, the day after Plaintiff submitted her complaint to Representative Geraghty, Plaintiff met with DSA Whitaker and

(continued...)

Plaintiff no benefit.  The face of the counseling memorandum indicates that the counseling session, and resulting memorandum, were non-punitive in nature and intended to address some of Plaintiff's performance deficiencies. (*See* Def. Rule 7.1 Stat., ¶ 221[7]).  While Plaintiff clearly did not like being counseled, (*see id.*[8]) , the employer had the right to counsel Plaintiff, like all other employees, when it learned of deficient work performance. Further, Plaintiff did not receive any discipline, nor any reduction in duties, status, authority, or pay.  A reasonable factfinder would not conclude that an employee in similar circumstances - that is, the employer addressing legitimate performance deficiencies resulting in a non-punitive counseling memorandum -  would be dissuaded from bringing or

---

[6](...continued)
Superintendent Ward for a formal counseling session, which DOCCS claimed was "non-punitive and [was] intended to be a positive and constructive" experience. (Whitaker Ex. "I"). The resulting counseling memo, dated October 13, 2016, reads as a laundry list of 11 allegations and criticisms against Plaintiff, repetitively used the statements "[t]his is very unprofessional and will not be tolerated" and "[t]his is unacceptable and will not be tolerated" throughout the memo. (*Id.*). Whitaker also characterized Plaintiff in the memo as "insubordinate." (*Id.*). Furthermore, Plaintiff was denied her request to bring Union  representation to this counseling session with Whitaker and Superintendent Ward. DOCCS' excuse for this denial was that "union representation is only for disciplinary purposes." (*Id.*).

(Dkt. 39, at 5-6).

[7]("Once again, this counseling is non-punitive and is intended to be a positive and constructive method of enforcing the need to comply with DOCCS Directives and guidelines. It is hoped that you will make efforts to see that similar situations of this nature do not occur in the future.")

[8]("You began this counseling session in a very defensive fashion requesting union representation. It was explained to you by Supt. Ward and myself that union representation is only for disciplinary purposes. The purpose of this was simply to ensure that policies and procedures as well as directives are adhered to. Your demeanor during this counseling session were inappropriate and very unprofessional. The yawning and tapping on your watch while stating 'are we almost done here? I have work to do' will not be tolerated. Comments and attitudes such as this are very insubordinate.")

supporting a claim of discrimination.  And Plaintiff has failed to present admissible evidence

which would be sufficient to permit a rational finder of fact to infer a retaliatory motive in the

counseling session.  Plaintiff fails to present evidence contradicting Defendant's evidence

that "[t]he counseling memorandum, and the meeting of October 12, 2016, was unrelated to

any complaint made by Plaintiff against Whitaker, and Whitaker did not hold the counseling

or draft this in any way to retaliate against Plaintiff for any prior complaint," (Def. Rule 7.1

Statement at ¶ 222), or that "Whitaker did not know of a complaint letter mailed to DOCCS

in Albany on October 12-13, 2016." (Def. Rule 7.1 Statement at ¶ 225).  To the extent

Plaintiff argues that the counseling session was the result of her December 28, 2015 ODM

complaint against Whitaker, that complaint is too temporally distant from the counseling

session to amount to a showing that the protected activity was followed closely by

discriminatory treatment.  While the Second Circuit has held that there is there is no "bright

line" rule for determining temporal proximity and in some circumstances even months-long

gaps between the exercise of a right and an adverse employment action could imply a

causal connection, *Summa v. Hofstra Univ.*, 708 F.3d 115, 128 (2d Cir. 2013), "[g]enerally,

courts in this circuit have held that the temporal nexus between the protected activity and

the adverse employment action must be three months or less to establish a causal

connection." *Jackson v. N.Y. State Off of Mental Health*, No. 11 Civ. 7832 (GBD) (KNF),

2012 WL 3457961, at *11 (Aug. 13, 2012)(collecting cases).  Moreover, Plaintiff has not

pointed to any other evidence indicating that Whitaker had a retaliatory motive, as opposed

to addressing legitimate workplace concerns, in holding the counseling session and issuing

the memorandum.  Plaintiff's disagreement with the results of the counseling session is

insufficient to support an inference of a retaliatory motive.  Thus, Defendant's motion is

granted to the extent the retaliation claim is premised on Whitaker's October 12, 2016 counseling session and October 13, 2016 counseling memorandum.

### f. December 16, 2016 Memorandum.

Plaintiff points to her receipt of a December 16, 2016 memorandum requesting a response to a workplace violence complaint by another employee against her as evidence of retaliation. (Ex. "1", Dkt. 1, ¶ 30; Ex. "51", Plaintiff Dep., pp. 265-66, 269-70).  Defendant contends that this claim is without merit.

The evidence indicates that Plaintiff was asked by Acting Deputy Superintendent for Security Services Burns to respond to a workplace violence (WPV) complaint filed against her by another employee by memorandum dated December 16, 2016. (Ex. "51", Plaintiff Dep., p. 269; Ex. "43").  Plaintiff responded. (Ex. "51", Plaintiff Dep., pp. 269-270; Ex. "44"). She was not formally disciplined for the December 16, 2016 WPV complaint. (Ex. "51", Plaintiff Dep., p. 270). Thus, Defendant argues, on its face this was not an "adverse action."

Plaintiff contends that the memorandum, which remains in her personnel file, was a "direct attack and character assassination" of her based upon conduct that she had not been previously counseled against. *See* Dkt. 39 at 20.[9]  She asserts that while she "was

---

[9]Plaintiff asserts:

Specifically, the memo alleges that Plaintiff engaged in "combative" and "demeaning" conduct against another employee, that she has told lies "solely for the purpose of causing friction between staff," that she leaves staff members "feeling stressed and upset" on almost a daily basis, and that the medical unit was in "turmoil" and in a worse position than before Plaintiff had returned from her 2016 NOD suspension. (Def. Ex. "43"). Plaintiff had not received any prior notice from anyone at DOCCS about any such alleged problems, and no one ever tried discussing these alleged matters with her in an informal or private manner before generating a formal memo for her record.

(continued...)

allowed to submit a written response to these allegations, the memo itself still exists on Plaintiff's record and serves as another bullet in the chamber that DOCCS could use against Plaintiff later on.  When viewed collectively with all of the other identified adverse actions, this memo can be viewed as adverse and part of an intended paper trail of allegations against Plaintiff for retaliatory purposes."  (*Id.*).

Defendant certainly had the right to request Plaintiff to respond to a WPV violence complaint filed by a coworker, and has the right to keep the documentation about this incident in Plaintiff's personnel file.  While Plaintiff complains that she was not previously counseled against the conduct asserted in the WPV complaint, she fails to presents facts from which a reasonable factfinder could conclude that the request to respond to the WPV complaint was taken for retaliatory reasons.  Accordingly, Defendant's motion is granted  to the extent the retaliation claim is premised on the December 16, 2016 memorandum requesting a response to a workplace violence complaint.

### g. DSA Sandra O'Connor's 2016-2017 employment evaluation of Plaintiff.

Plaintiff claims DSA Sandra O'Connor's 2016-2017 employment evaluation of Plaintiff, provided on November 9, 2017, (O'Connor Decl., ¶ 11), was retaliatory. (Ex. "51", pp. 143-43).  Defendant contends, *inter alia*, that O'Connor was unaware of any prior complaints filed by Plaintiff against Whitaker, and thus there could be no causal connection between Plaintiff's protected activity and the evaluation because O'Connor was unaware of the protected activity.

Plaintiff has failed to offer any evidence indicating that O'Connor was aware of

_____

[9](...continued)
Dkt. 39 at 20.

Plaintiff's ODM complaint against Whitaker.  Plaintiff's unsupported denial of Defendant's supported contention that "O'Connor did not discuss the Plaintiff in any way with her predecessor as DSA at Mid-State, Terry Whitaker, who had retired when she began that position," (*see* Pl. Resp. to Def. L.R. 7.1 ¶ 269), is insufficient to create a question of material fact on this issue.  However, "[n]othing 'more is necessary than general [organizational] knowledge that the plaintiff has engaged in a protected activity." *Summa v. Hofstra Univ.*, 708 F.3d 115, 125–26 (2d Cir. 2013) (quoting *Gordon v. N.Y.C. Bd. of Educ.*, 232 F.3d 111, 116 (2d Cir. 2000)). The Second Circuit has held that complaining of discrimination to an officer of a corporate defendant, *Zann Kwan*, 737 F.3d at 844, or to high-level officials of a defendant organization, *Summa*, 708 F.3d at 125–26, is enough to impute knowledge to a defendant.  The facts here indicate that Plaintiff repeatedly complained to high-ranking DOCCS officials about Whitaker's conduct. Thus, knowledge would be imputed to Defendant and it would not matter that O'Connor did not personally know that Plaintiff engaged in protected activity regarding Whitaker.

Defendant also argues that "as is detailed in DSA O'Connor's declaration and summarized fully in . . .  paragraphs [267 - 290] of [Defendant's]  Rule 7.1 statement, O'Connor had legitimate performance-related reasons for the critiques discussed in the evaluation." Dkt. 38-65 at 19.  Plaintiff responds:

> As with the preceding year's performance evaluation that was conducted by Whitaker, a number of key criticisms made by DSA O'Connor in Plaintiff's 2016-2017 evaluation reiterated and continued with contested points that DSA Whitaker said against Plaintiff. (Def. Ex. "51" at 144-45). The evaluation also unfairly criticized Plaintiff for issues that she could not help or have any reasonable control over, such as being cited for missing meetings when she was out sick. (*Id.* at 147). She was also dissuaded from communicating and talking about matters with DOCCS officials when doing so in the past would lead her to being berated at meetings and in public by Whitaker. (*Id.* at 153).

> While constructive criticism can be helpful and necessary for people at times, the nature and reception of it drastically changes when it is routine accompanied by harassment such as what Plaintiff had been experiencing for the past two years. (*Id.* at 152). When it came to discussing these points with DSA O'Connor, Plaintiff's account was often ignored by O'Connor who would believe others rather than Plaintiff. (*Id.* at 154).

Dkt. 39 at 22-23.

The evidence indicates that Plaintiff received a "Satisfactory" evaluation for the 2016-2017 evaluation.  While O'Connor recommended that Plaintiff use a mentor and stressed "the importance of her acting professionally and keeping calm and cool when speaking to other staff, " (O'Connor Decl. ¶¶ 7-10), there is no indication that Plaintiff's job duties were altered or that she lost any job benefits.

As to Plaintiff's claim that she was "dissuaded from communicating and talking about matters with DOCCS officials," she testified: "When they say, effectively communicate. I was scared to do that. And to  communicate, I didn't  want to talk to be in a meeting. They berated me in meetings. I was their joke at the department head meetings."  (Def. Ex. "51" at 153).  To the extent this conclusion is based on O'Connor's recommendation that Plaintiff act professionally and keep calm and cool when speaking to other staff, no reasonable factfinder could conclude that this advice amounted to an impediment to "communicating and talking about matters with DOCCS officials."

As to meeting attendance, the evaluation indicates that Plaintiff "was absent from the QI meeting that was scheduled for 8/30/17. Michele did not attend the Executive Meeting on 7/11/17. Michele was absent from the facility for two of the three Superintendent's Department Head Conference during this evaluation period," and indicates that "Michele need[s] to ensure she attends all scheduled meetings to foster working relationships with

30

other staff members. Meeting attendance is mandatory. Meetings are a tool we use for communication of information which will help her effectively supervise her area." (O'Connor Decl. ¶ 7).  The evaluation also indicates that "Michele is a member of both Environmental Services Committee and Internal Controls Committee. She did miss some of the meetings during this evaluation period. She completed her inspections for Environmental Services timely." (*Id.*)  However, the evaluation also indicates that Plaintiff's "Time and Attendance" was satisfactory.  (*Id.*)  While Plaintiff may disagree with the job-related constructive criticism she received from O'Connor, Plaintiff, like all employees, must accept a supervisor's constructive criticisms even if she does not agree with them.  There is nothing in the evaluation that raises an inference that a reasonable employee in the same situation would be dissuaded from making or supporting claim of discrimination.  Furthermore, especially because there is no evidence indicating that O'Connor discussed the Plaintiff in any way with Whitaker, there is noting surrounding the evaluation from which to infer that O'Connor's evaluation - which was "Satisfactory" overall - was motivated by discriminatory intent.  Thus, Defendant's motion is granted to the extent the retaliation claim is premised on O'Connor's 2016-2017 employment evaluation of Plaintiff.

**h. January 12, 2018 Formal Counseling Memorandum**

Plaintiff claims that DSA O'Connor's January 12, 2018 counseling memorandum was retaliatory. (Ex. "1", Dkt. 1, ¶ 39; Ex. "51", Plaintiff Dep., pp. 308-09).  Defendant again argues that O'Connor was unaware of Plaintiff's prior complaints, and thus no causal connection could exist between the protected conduct and the January 12, 2018 counseling memorandum.

The January 12, 2018 counseling memorandum concerned an incident report by

staff who overheard Plaintiff and Ms. Plaisime arguing loudly while in the hallway in the

facility. (*See* Pl. Resp. to Def. 7.1 Stat. ¶¶ 291-93).   Plaintiff told O'Connor that she "did not

raise [her] voice; that the hallway echoes." (*Id.* ¶ 291).   O'Connor told Plaintiff "that it is not

appropriate to discuss your staff's personal issues such as 1202's or why someone has

called in to work." (*Id.* ¶ 291).   Plaintiff told O'Connor that she "did not ask RN Plaisime why

she called in and told her that [Plaintiff] did not want to know why, but that [Plaintiff] did

discuss her 1202 with her in the hallway and in the medical records room. [Plaintiff] told

[O'Connor] that [she] did not ask RN Plaisime to go to [Plaintiff's] office to talk; that [Plaintiff

was] discussing other things when [she] brought up the 1202." (*Id.*)   O'Connor told Plaintiff

that "the Time and Attendance Lt. is responsible for the 1202's and issues with other staff

absences. [Plaintiff] agreed that any future discussion with staff regarding personal matters

will be done in private. [O'Connor] told [Plaintiff] that this was not a discipline but a guidance

and advice meeting, [Plaintiff] mentioned 'constructive criticism.' [O'Connor] told [Plaintiff] to

be sure to keep [her] voice down even if someone else is raising hers and read section 2.7

Communications from the Employee Manual."  (*Id.*).   Plaintiff was told she had the right to

respond in writing, that would be kept in her personnel file, but there was no disciplinary

action taken.  (*See id.* ¶¶ 291-96).   Plaintiff indicates that she submitted a rebuttal memo

"wherein she provided a detailed synopsis and explanation for the incident that took place"

which "emphasized how [Plaintiff] was acting as a concerned supervisor in dealing with an

aggressive employee, and that [Plaintiff] was being held to a more scrutinous standard

compared to other supervisors."  Dkt. 39 at 23.  Plaintiff also complains that she was "again

denied a request to have Union representation attend this counseling session."  (Id.).

Plaintiff's contention that she was not in the wrong, and that she was singled out for

counseling, fails to present admissible facts from which a reasonable fact finder fact could infer that O'Connor acted for a retaliatory reason.  The facts indicate that the complaint was brought to O'Connor's attention by other employees, and Plaintiff admitted that she was improperly discussing matters in the hallway.  Further, there is no evidence that O'Connor discussed Plaintiff in any way with Whitaker, and there was no disciplinary action taken. Although Plaintiff may perceive the simple counseling as retaliatory, that is insufficient. Plaintiff, like all employees, must accept counseling when she violates policy and regulations, even if she earlier complained about another supervisor's treatment of her. Defendant's motion is granted to the extent the retaliation claim is based on  O'Connor's January 12, 2018 counseling memorandum.

   **i. Other incidents of harassment**.

   Plaintiff also points to general allegations of being elbowed, touched and shoved by employees she supervised, and phone calls from the facility when she was off-duty. (Ex. "1", Dkt. 1, ¶¶ 38-39).

   With respect to being "elbowed" by Debbie Jadhon, "touched" in the left arm by Ms. Plaisime, and "shoved" and threatened by Lyubov Savitsky, all employees she supervised, Plaintiff "believes" these acts were retaliation, but admitted she did not know why the employees did this or if it was retaliation. (Ex. "51", Plaintiff Dep., pp. 299-302).  Generally speaking, allegations of co-worker harassment are, by themselves, insufficient to support a retaliation claim  *See Nunez v. New York State Dep't of Corr. & Cmty. Supervision*, 2015 U.S. Dist. LEXIS 100528, *40-41 (S.D.N.Y. July 31, 2015). Further, Plaintiff's speculation that these co-workers took the complained-of action because of her prior complaints against Whitaker is insufficient to create a question of fact. *See McPherson v. N.Y. City Dep't of*

*Educ.*, 457 F.3d 211, 215 (2d Cir. 2006) (speculation alone is insufficient to defeat a summary judgment motion); *see also, Wright v. Goord*, 554 F.3d 255, 274 (2d Cir. 2009)(dismissing retaliation claim against a corrections officer when the only alleged basis for retaliation was a complaint about an incident involving another corrections officer). Defendant's motion is granted to the extent Plaintiff's retaliation claim is based on these co-workers' actions.

Plaintiff also believes that phone calls she received at home while off-duty were retaliation. However, at deposition she admitted that all the calls were work-related, and made to her in her capacity as NA.  None were verbally abusive, and she was never formally disciplined for not picking up calls, these calls were never mentioned in evaluations, and no adverse action was taken in connection with these calls. (Ex. "51", Plaintiff Dep., pp. 303-306).  Defendant contends that Plaintiff cannot establish that these calls were "adverse actions."   Plaintiff counters, however, that she would often receive calls from Whitaker and other DOCCS officials late at night (10:30pm) on days and weekends when she would not be on call.  Plaintiff contends that whenever she would either fail to see a call or elect not to answer, she would be berated by Whitaker at work.  She further contends that Whitaker would argue that her not answering his calls amounted to refusing his direct orders, and this caused undue stress and anxiety for her. (Dkt. 39 at 23 citing Def. Ex. "51" at 303-306).

Although the calls were work related and Plaintiff was never disciplined for not answering the calls, a reasonable employee in Plaintiff's position could find that Whitaker's actions of berating Plaintiff for not answering the calls could dissuade that employee from making or supporting a charge of discrimination.  In this regard, Plaintiff has met her *de minimis* burden of establishing an adverse action in relation to Whitaker's response to

34

Plaintiff not answering telephone calls when she was off duty.

**Pretext**

Defendant has presented legitimate, non-discriminatory rationales for the actions that remain a part of Plaintiff's retaliation claim.  Defendant argues that Plaintiff cannot point to any evidence that the Defendant's legitimate, non-discriminatory rationales for these actions were pretextual and that retaliatory animus was the "but-for" cause of any adverse action. Plaintiff argues that "[c]onsidering the long-standing and ongoing pattern of adverse actions Whitaker had helped initiate against Plaintiff . . .  since her complaints against him, there is a strong inference of retaliatory motivation against Plaintiff to continue attacking her."  (Dkt. 39 at 21).

"Once the defendant articulates a legitimate, non-retaliatory reason for the adverse employment action, the plaintiff must present evidence sufficient to support a finding that the defendant's purported reason for the adverse employment action was a pretext for retaliation." *Dedjoe*, 2017 WL 4326516, at *15 (citing *Zann Kwann*, 737 F.3d at 847).  To show that an employer's explanation is a pretext for retaliation, an "employee's admissible evidence must show 'that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer.'" *Kirkland v. Cablevision Sys.*, 760 F.3d 223, 225 (2d Cir. 2014) (quoting *Zann Kwan*, 737 F.3d at 845).   "This evidence 'must establish that [the plaintiff's] protected activity was a but-for cause of the alleged adverse action by the employer.'" *Dedjoe*, 2017 WL 4326516, at *15 (quoting *Nassar*, 133 S. Ct. at 2534).  "A plaintiff may prove that retaliation was a but-for cause of an adverse employment action by demonstrating weaknesses, implausibilities, inconsistencies, or contradictions in the employer's proffered legitimate, nonretaliatory reasons for its action." *Zann Kwan*, 737

35

F.3d at 846; *see Eldaghar v. City of N.Y. Dep't of Citywide Admin. Servs*., No. 02-CV-9151, 2008 WL 2971467, at \*12–13 (S.D.N.Y. July 31, 2008) (finding evidence of procedural irregularities to raise "genuine issues of material fact regarding ... retaliatory motivation"); *Villar v. City of New York*, 135 F. Supp. 3d 105, 125 (S.D.N.Y. 2015) ("Departures from procedural regularity can be evidence of pretext.").  In addition, "a plaintiff may rely on evidence comprising her *prima facie* case, including temporal proximity, together with other evidence such as inconsistent employer explanations, to defeat summary judgment at that stage." *Zann Kwan*, 737 F.3d at 847; *see Buczakowski*, 2022 WL 356698, at \*13 ("[T]emporal proximity can be considered as evidence of pretext, even if timing alone is not enough to establish pretext.")(citations omitted).

Here, Plaintiff's evidence indicates that she submitted two (2) ODM complaints, and a memorandum complaint against DSA Whitaker. Within just over a two (2) year span starting from when Plaintiff filed her first ODM complaint, Plaintiff dealt with three (3) Notices of Discipline, all of which DSA Whitaker was involved in drafting and initiating.  She also received 15 months of unpaid suspension over an 18 month span, all of which was found to be unsupported and unwarranted by independent arbitrators.  In addition, her first ever "Unsatisfactory" work performance evaluation (2015-2016 – conducted by DSA Whitaker), was appealed and eventually overturned.

Construing this evidence in the light most favorable to Plaintiff, a reasonable factfinder could conclude that Defendant's rationales for its treatment of Plaintiff was a pretext for illegal retaliation. *See Kirkland*, 760 F.3d at 225 (Summary judgment should be denied to an employer where "[t]he record contains enough evidence that, if credited, could support a jury's finding that [the employer's] rationale for [the employee's] treatment and

eventual termination was a pretext for illegal ... retaliation.").  Much of the challenged employer action followed Plaintiff's complaints about Whitaker, the suspensions were found to be improperly imposed, many of the charges against her were deemed unfounded, withdrawn, settled, or improperly lodged, and the overall "Unsatisfactory" performance evaluation by Whitaker was reversed.  As the Second Circuit noted in *Zann Kwan*, "[t]he determination of whether retaliation was a 'but-for' cause, rather than just a motivating factor, is particularly poorly suited to disposition by summary judgment, because it requires weighing of the disputed facts, rather than a determination that there is no genuine dispute as to any material fact." 737 F.3d at 846, n. 5.   Here, the evidence construed in the light most favorable to Plaintiff reasonably indicates that Defendant, acting through Whitaker, repeatedly sought to discharge Plaintiff without meritorious bases, improperly suspended her without pay, provided her an unwarranted performance evaluation, and Whitaker publically berated Plaintiff for not answering telephone calls when she was not on call.  "A jury should . . .  determine whether the plaintiff has proved by a preponderance of the evidence that she did in fact complain about discrimination and that she would not have been [treated in these respects] if she had not complained about discrimination." *Id.*

## V.   CONCLUSION

For the reasons set forth above, Defendant's motion for summary judgment, Dkt. 38, is **GRANTED in part** and **DENIED in part**.  The motion is granted and the retaliation claim is **DISMISSED** to the extent it is premised upon the contentions that Defendant retaliated against Plaintiff by: (1) failing to timely pay her back-pay following her return from her first suspension; (2) the alleged conduct in Plaintiff's 12/28/2015 ODM complaint; (3) the conduct alleged in Dkt. 1-6 with the exceptions of being hassled when getting her non-back

pay checks and having to fight to have her accruals properly calculated upon her return from her first suspension; (4) the December 16, 2016 memorandum requesting a response to a workplace violence complaint; (5) Whitaker's October 12, 2016 counseling session and October 13, 2016 counseling memorandum; (6) O'Connor's 2016-2017 employment evaluation of Plaintiff; (7) O'Connor's January 12, 2018 counseling memorandum; and (8) Plaintiff being elbowed, touched and shoved by employees she supervised.  The motion is denied in all other respects.

**IT IS SO ORDERED.**

Dated: March 8, 2022

Thomas J. McAvoy
Senior, U.S. District Judge